## THE WANOLA.

### (District Court, D. Massachusetts. February 26, 1919.)

### No. 1527.

1. SALVAGE ⊙═9—NATURE OF SERVICE.
   Service, incidental to salvage of cargo, in moving to Boston hull of vessel wrecked on beach at Point Allerton, *held* salvage service.
2. SALVAGE ⊙═30—AMOUNT OF AWARD—MOVING WRECKED VESSEL.
   A salvage award of $500 made for moving to Boston, from beach at Point Allerton, hull of wrecked vessel worth $3,000, incidental to salving, under contract, the cargo, for which service salvor had been paid.

In Admiralty. Libel for salvage by Arnette E. Betts against the schooner Wanola; William Levy, claimant. Decree for libelant.

George L. Dillaway, of Boston, Mass., for libelant.

Goodwin, Proctor & Ballantine and Fitz-Henry Smith, Jr., all of Boston, Mass., for claimant.

HALE, District Judge. The libelant, doing business under the name of Betts Bros. & Co., and as surviving partner, brings this libel for salvage services rendered to the Wanola, a three-masted schooner driven on the beach and wrecked in January, 1917, at Point Allerton, just outside Boston Harbor.

At the time of her stranding the schooner was loaded with a cargo of coal. The Scott Wrecking Company was employed in salving the schooner and cargo; it succeeded in saving a portion of the coal, and then stripped the schooner, taking everything that was movable. On January 17 the cargo was abandoned to the underwriters. The hull was sold at public auction to William Levy for the sum of $420. Levy now appears as claimant. On January 23, under an agreement with the underwriters, Betts Bros. & Co. proceeded to save the cargo for 75 per cent. of its value. The libel alleges that they agreed also with the representatives of the owners of the schooner to attempt to save the hull of said schooner "on a salvage basis"; that, in doing the salvage service, they employed two lighters, valued at $7,500, and other equipment, valued at $1,500, and employed three tugs, of a value of $43,000; that they now seek to recover $1,500 as the amount agreed upon between the parties for the salvage service, alleging also that, even if the court should not find such agreement, under the testimony, there should be a recovery of as much as $1,500 for the services.

The answer denies that any agreement was ever made fixing the amount of the compensation, or that there was ever any agreement of any kind made "concerning the salving of the hull of said schooner on a salvage or other basis." It alleges that the work on the vessel was done under agreement with the owners of the cargo for the benefit of the cargo, not for the benefit, or at the request, of the claimant. It also alleges that, after the claimant had purchased the schooner in its wrecked condition, on the beach, the representative of the claimant re-

ceived a telephone message from Betts Bros. & Co. that the schooner had floated on the high tide, and asking what should be done with her; that the agent of the claimant requested that they procure a tug and tow the vessel to Boston; that subsequently the schooner was towed to East Boston, and left on the flats; that there was then some 310 tons of coal in the schooner; that she lay on the flats for about four days, with the coal in her hold; that on January 20, the libelant, without the knowledge of the claimant, took the schooner from the flats and left her at a coal wharf in Boston where the cargo was discharged, and where she lay for about five days while being discharged; that the libelant had an agreement with the cargo owners for 75 per cent. of the coal recovered from the schooner, the owners to have the other 25 per cent.; and that, if the libelant is entitled to any services for salvage of the schooner, the claimant should be entitled to have the value of such services reduced by the value of the use of the claimant's vessel, at the time the salvage services were rendered.

It is clear that Betts Bros. & Co. fixed the amount of their charge at $1,500, and so notified Levy's agent. The claimant strenuously denies that he ever agreed to pay so large an amount. When this sum was first mentioned as the value of the services, the claimant replied that it was too much. He had purchased the vessel on the beach for $420. He urges that he would not be likely to pay so large a sum as $1,500 to get her off the beach without at least making some effort to get the work done for a less sum. The libelant relies upon the testimony of Edward H. Betts, upon a conversation over the telephone with the claimant, and upon a memorandum in a certain book. Such memorandum, however, is to the effect only that an agreement was made; it does not bear upon the price to be paid for the services. The testimony of Betts is not convincing. Upon examination of the proofs upon this point, I am of the opinion that the libelant has not met the burden of proving an agreement that the specific sum of $1,500 was to be paid for the services.

[1, 2] It now becomes the duty of the court to determine what is a reasonable award. I think the service must be held to be a salvage service; it was not merely a towage service; it was not merely a service for expediting the voyage. But, as Judge John Lowell said in Baker v. Hemenway, Fed. Cas. No. 770:

"The important * * * part of the case is not the name by which" the services are "to be called, but the amount which shall be decreed."

See, also, The Rebecca Shepherd (D. C.) 148 Fed. 727, 731.

The value of the vessel receiving the salvage services was fixed by agreement at $3,000. On January 25, Betts Bros. & Co. went to the wreck, taking along a lighter and two small tugs, and securing the services of a diver. The proofs lead me to the conclusion that the greater part of the service was rendered in saving the cargo. The services of the tugs Betsey Ross and Sadie Ross in pulling off the schooner towing her to Boston and leaving her on the flats, amounted to $110, and has been paid by the claimant. Certain services were,

however, rendered for the benefit of the schooner by Betts Bros. & Co. with their lighters. The schooner was taken to a place of safety on the East Boston flats and grounded there. She lay upon the flats four days, during which time the divers worked on her plugging up holes; the lighters of the libelant lying alongside and pumping. She was taken to the City Fuel Company's wharf and discharged; this took two days more; and, during this time, the divers stood by to take care of any leaks which might develop. When the salvage service was undertaken, the schooner was lying in an exposed position, where, in case of storm, she might have been lost; but it is to be noted that, during the time the service was rendered, the weather was good and the conditions favorable.

While salvage is a proper claim, even though the ship was saved in the process of saving the cargo, still the fact that the two services were rendered as a part of one transaction has some bearing upon the amount to be awarded for the salvage of the ship. The libelant has already received a substantial sum for salving the cargo. He is entitled, also, in my opinion, to some salvage award for salving the schooner. In Daniel v. Cargo of Lumber (D. C.) 240 Fed. 498, it was held that the saving of the cargo was a salvage service, for which the libelants were entitled to compensation, but that it was a service of low order, since it was incidental to the saving of the vessel. In the case at bar, the proofs tend rather to show that the salving of the schooner was incidental to the salving of the cargo.

The libelant contends that the award for this service in salving the vessel should be at least $1,500. This would be 50 per cent. of the value of the schooner. When we take into consideration all the facts in testimony relating to the adventure, I think an award of 50 per cent. would be grossly in excess of anything warranted by the proofs.

Upon the testimony, I think $500 a liberal award for the salvage services. I therefore fix the amount to which the libelant is entitled at $500. For this sum a decree may be entered, with costs.